**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DONALD J. TOTH, II ) | CASE NO. 1:18-cv-01454 |
| ) | |
| Plaintiff, ) | JUDGE DAN AARON POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| NANCY A. BERRYHILL, ) | |
| *Acting Comm'r of Soc. Sec.*, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff, Donald J. Toth (hereinafter "Plaintiff"), challenges the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter "Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On June 8, 2015, Plaintiff filed his applications for POD, DIB, and SSI, alleging a disability onset date of July 4, 2010.[1] (Transcript ("Tr.") 231-243). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 163-181). Plaintiff participated in the hearing on June 26, 2017, was represented by counsel, and testified. (Tr. 59-94). A vocational expert ("VE") also participated and testified. *Id*. On November 22, 2017, the ALJ found Plaintiff not disabled. (Tr. 11-21). On April 26, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7). On June 26, 2018, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12, 14 & 15).

Plaintiff asserts the following assignments of error: (1) the RFC is not supported by substantial evidence because it does not account for all of his mental limitations, and (2) the ALJ erred by failing to consider the statements of Plaintiff's father. (R. 12).

**II. Evidence**

**A. Relevant Medical Evidence**[2]

    **1. Treatment Records**

On May 27, 2015, physician assistant Michell McDiffett noted that care was established with Plaintiff, with the goal of having Plaintiff decrease/abstain from substance abuse while stabilizing his behavioral health. (Tr. 1322). Plaintiff stated that his goal was "[t]o be my old self

---

[1] The alleged onset date was amended to April 27, 2015 at the hearing. (Tr. 11).
[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

again. I would like to get a place of my own and apply for disability." *Id*. On mental status examination, Plaintiff was oriented x 4 but appeared drowsy, his attention and concentration were intact, he appeared nervous but was cooperative, his mood and affect were dysthymic and restricted, his thought process was logical and coherent, his fund of knowledge was intact, his recent and remote memory was fair, and his judgment and insight were fair. (Tr. 1323-1324). Plaintiff had anxious thoughts, panic attacks, possible agoraphobia, depressed thoughts, and ruminations, but no suicidal/homicidal ideation, no psychosis, and no mania. (Tr. 1324).

On June 7, 2016, Plaintiff reported problems with depression and severe anxiety, but reported improvement of the former with medications. (Tr. 2544). On mental status examination, Plaintiff had normal speech, anxious mood and affect, linear and goal-directed thought processes, no delusional thoughts, and partial insight/judgment. (Tr. 2545). Plaintiff was not open to treatment suggestions and decided to discontinue services. *Id*. Premal Patwa diagnosed generalized anxiety disorder, severe major depressive disorder, severe opioid use disorder, severe stimulant use disorder (amphetamine/crack cocaine), and cannabis use disorder. *Id*.

On July 26, 2016, Plaintiff was seen by Kimberly Goats for therapeutic services at the referral of Carington Park. (Tr. 2821-2822). Plaintiff reported struggling with depression and severe anxiety for most of his life. (Tr. 2821). He reported abusing alcohol as well as heroin, cannabis, and methamphetamines. *Id*. Plaintiff reported a history of long-term recovery when he was prescribed Klonopin by his former doctor, and noted that his substance abuse relapses have coincided with lapses in insurance coverage and the ability to maintain medication use. *Id*. Plaintiff reported that being at Carington Park and being prescribed valium has "made a world of difference" regarding his mental health concerns. (Tr. 2821-2822). He reported being able to function "normally," and not being triggered to abuse substances as in the past. (Tr. 2822).

On August 15, 2016, treating physician Pazhaniaandi Tirounilacandin, M.D., indicated that Plaintiff's depression and anxiety were "very well controlled" and that Plaintiff "denies sadness, heaviness, irritability, mood swings, denies loss of interest or pleasure in their [sic] usual activities, denies difficulty concentration, denies lack of energy or motivation. Also denies feelings of worthlessness and hopelessness or helplessness." (Tr. 2798). Treatment notes also indicated that Plaintiff "denies any anxiety attacks. Denies symptoms like palpitations, pounding heart, sweating, trembling or shaking. Patient also denies shortness of breath, choking sensation or chest discomfort. No nausea or vomiting dizziness or lightheadedness. No fear of losing control." *Id*.

2. **Medical Opinions Concerning Plaintiff's Functional Limitations**

On June 24, 2015, Stacey B. Foerstner, Ph.D. performed a consultative examination of Plaintiff. (Tr. 631-635). On mental status examination, Toth's appearance and behavior were unremarkable; his speech rate and rhythm were responsive and within normal limits though understandability was compromised by Plaintiff's lack of teeth; flow of conversation and thought was unremarkable save for strained facial expressions; his thought content was negative for delusions, obsessions, and no tangential or circumstantial thinking; he reported suicidal ideation as recently as yesterday; he reported fear of people and events; in the area of insight/judgment he had adequate ability to formulate and articulate thoughts and displayed emotional reasoning and sufficient focus; his mood was distressed; and his affect was anxious and depressed. (Tr. 634). (Tr. 634) Dr. Foerstner completed a checklist questionnaire mental RFC assessment, indicating marked limitations in the following areas: the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted; the ability to

4

complete a normal workday without interference from psychiatric symptoms; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to use public transportation; and the ability to set realistic goals. (Tr. 630). Dr. Foerstner opined that Plaintiff's mental limitations as set forth in the questionnaire were expected to last between 9 and eleven months. *Id*.

On September 24, 2015, state agency psychologist Juliette Savitscus, Ph.D., reviewed Plaintiff's file and completed a mental RFC assessment. (Tr. 106-108). She opined Plaintiff was moderately limited in his ability to understand and remember detailed instructions, explaining that Plaintiff is able to carry out simple, routine, repetitive tasks of 1-3 steps for at least two-hour intervals. (Tr. 106). In the area of concentration and persistence, Dr. Savitscus assessed moderate limitations in Plaintiff's ability to do the following: carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest. (Tr. 107). She explained that Plaintiff is "able to complete routine tasks over normal 8 hour -workday w/customary breaks in an environment with no high pace or production requirements." *Id*. In the area of social interaction, Dr. Savitscus assessed moderate limitations in Plaintiff's ability to do the following: interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id*. She explained that while Plaintiff asserts increased anxiety due to public interaction, he has been shown to be cooperative and

5

participatory. (Tr. 108). Therefore, she concluded Plaintiff can "interact for brief periods w/ coworkers and general public." *Id*. Finally, in the area of adaptation, Dr. Savitscus assessed moderate limitations in Plaintiff's ability to do the following: respond appropriately to changes in the work setting. *Id*. She explained that Plaintiff "retains the ability to work in an environment that has infrequent changes that can be explained." *Id*.

On February 9, 2016, state agency psychologist Vicki Warren, Ph. D., reviewed Plaintiff's file and completed a mental RFC assessment. (Tr. 140-142). Dr. Warren's findings mirrored those of Dr. Savitscus. *Id*.

**B. Non-Medical Third-Party Statements**

On June 6, 2017, Plaintiff's father completed a questionnaire stating that his son's "biggest problem is his depression, anxiety, [and] panic attacks." (Tr. 327, Exh. 15E). He noted Plaintiff's persistent symptoms include dizziness, shortness of breath, swelling of the feet, vision problems, sweats, depression/panic/anxiety, fatigue, weakness, and nausea. *Id*. He indicated Plaintiff stays up late into the night and sleeps most of the day. *Id*. He further indicated the Plaintiff avoids people when he can, stays in the apartment all day, has trouble concentrating, and becomes nervous before having to meet someone. (Tr. 328). He noted past suicide attempt(s). *Id*. He assessed extreme limitations in Plaintiff's activities of daily living and marked limitation in maintaining social functioning. (Tr. 330).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or

6

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 27,

7

2. 2015, the amended onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

2. The claimant has the following severe impairments: coronary artery disease/cardiac myopathy; hyperlipidemia; essential hypertension; gastroesophageal reflux disease (GERD); Hepatitis C; diabetes; history of lumbar laminectomy and pancreatitis (related to alcohol use); obesity; depression; anxiety; and substance addiction disorder (20 C.F.R. § 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, sitting for six hours, standing for six hours, walking for six hours, push/pull as much as lift/carry; claimant can climb ladders, ropes or scaffolds frequently, stoop frequently, crawl frequently; the claimant is limited to simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work), limited to simple work-related decisions in using his judgment and dealing with changes in the work setting, and he is limited to frequent interaction with coworkers, supervisors and the public.

5. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6. The claimant was born on *** and was 50 years old, which is defined as an individual closely approaching advanced age, on the amended disability onset date (20 CFR 404.1563 and 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

8

      10.      The claimant has not been under a disability, as defined in the Social Security Act, from April 27, 2015, the amended onset date, through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

(Tr. 14-21).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

B. **Plaintiff's Assignments of Error**

**1. RFC Finding**

In the first assignment of error, Plaintiff asserts the RFC finding is not supported by substantial evidence, because it does not account for all of his non-exertional mental limitations. (R. 12, PageID# 2991-2992). Specifically, Plaintiff argues that despite assigning "great weight" to the opinions of state agency psychologists, Dr. Savitscus and Dr. Warren, the ALJ omitted from the ultimate RFC their opinion that Plaintiff should have only brief interactions with others. *Id.* Furthermore, Plaintiff avers the ALJ gave no explanation for omitting the brief interactions limitation. *Id.* The Commissioner asserts that any error resulting from said omission was harmless. (R. 14, PageID# 3002-3004).

A claimant's RFC is an indication of an individual's work related abilities *despite* the person's limitations. *See* 20 C.F.R. §§ 404.1545(a).³ Therefore, it is the ALJ who bears the responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1546(c). Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th

---

³ Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

Cir. 2005) (*citing Varley*, 820 F.2d at 779)).

In addition, Social Security Ruling ("SSR") 96–6p requires an ALJ to consider opinions given by state agency medical experts when considering disability claims. Nevertheless, ALJs are not automatically bound by such medical opinions, but they "may not ignore [them] and must explain the weight given to the opinions in their decisions." *Edwards ex rel. L.T. v. Colvin*, No. 12-C-7639, 2013 WL 3934228, at *4 (N.D. Ill. July 30, 2013) (quoting SSR 96-6p); *see also Johnson v. Astrue*, No. 1:09CV2959, 2010 WL 5559542, at *5 (N.D. Ohio Dec. 3, 2010) (same).

Plaintiff's representation—that the ALJ did not explain why the "brief interaction" limitation was omitted from the RFC—is accurate. Nonetheless, it does not follow that the ALJ's explanation with respect to Drs. Savitscus and Warren is procedurally inadequate, or that the ultimate RFC determination was not supported by substantial evidence. Similar arguments have been addressed and rejected by other courts. *See, e.g., Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013) (White, M.J.) ("The ALJ giving 'great weight' to [physician's] opinion did not require him to adopt the stated limitation related to [Plaintiff's] inability to operate hand and foot controlled devices more than occasionally."); *Newsome v. Astrue*, No. 11-cv-1141, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) ("[T]he fact that [the ALJ] gave 'great weight' to Dr. Naseer's opinion does not mean that he was required to adopt it wholesale. The issue of RFC is reserved to the Commissioner; while the assessment of RFC must be based on evidence in the record, 'the final responsibility for deciding these issues is reserved to the Commissioner.'") (citations omitted).

11

The ALJ's decision to give "great weight" to those portions of the state agency psychologists' opinions that he found supported by the evidence did not require him to adopt every limitation assessed.

Moreover, the court agrees with the Commissioner that any error stemming from the ALJ's omission of the "brief interaction" requirement was harmless error. The RFC adopted by the ALJ limited Plaintiff to frequent interaction with coworkers, supervisors and the public. (TR 16). "Frequent" means occurring from one-third to two-thirds of the time. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983). Conversely, "occasionally" means "occurring from very little up to one-third of the time." *Id.* The term "brief" is not defined by the state agency physicians, nor does Plaintiff argue that the term "brief" is a term of art in the social security context. As such, it is hardly surprising that the ALJ eschewed using the term "brief" both in the RFC and in his hypotheticals questions in favor of terms that have clear definitions in the social security disability context.

Because it frames the parties' arguments, the court summarizes the material portions of the VE's testimony:

> [ALJ]: [A]ssume that the hypothetical individual is limited as follows. To light, frequent climbing of ramps, pardon me, frequent climbing of ladders, ropes, or scaffolds; frequently stoop; frequently crawl. Limited to performing simple, routine, and repetitive tasks, but not at a production rate pace, i.e. assembly line work. Limited to simple, work-related decisions and using his judgement and dealing with changes in the work setting. Able to frequently interact with supervisors, coworkers, and the public.

(Tr. 88). The VE testified such an individual could perform the following light and unskilled jobs: merchandise marker, Dictionary of Occupational Titles ("DOT") 209.587-034 (180,000 jobs nationally); mailroom clerk, DOT 209.687-026 (105,000 jobs nationally); and housekeeping/cleaner, DOT 323.687-014 (130,000 jobs nationally). (Tr. 89). The ALJ inquired

12

as to the impact of changing the hypothetical to reduce interaction with coworkers and the public to "occasionally." (Tr. 89). The VE testified that the same three jobs remained. (Tr. 90). The ALJ followed up by asking:

> [ALJ]: In my third hypothetical, if I were now to modify the interaction with supervisors to occasional, could that hypothetical individual perform any work, and if so, would you please provide me with several representative examples with numbers of jobs for each?
>
> [VE]: After the initial training period, the same three jobs that I cited would fit this hypothetical as well. However, during the initial training period, by necessity, the worker will have more contact with supervision, than occasional, to learn the new job.
>
> [ALJ]: In my fourth hypothetical, assume the same limitations I described in hypothetical number three, but now modifying it that the hypothetical individual could never interact with the public. Could that hypothetical individual perform any work, and if so could you please provide me with several representative examples, with numbers of jobs for each?
>
> [VE]: The same three titles would apply to this hypothetical as well. But I'd have to reduce the numbers of the housekeeping, cleaner to represent the housekeeping, cleaners who are not required to interact with the public as part of their job. And that reduction takes us to 96,000 in the nation.

(Tr. 90).

Assuming *arguendo* that the ALJ should have adopted the "brief interaction" limitation and further assuming that "brief interaction" is inconsistent with frequent interaction with coworkers, supervisors and the public, a remand would still not be required. As the VE's above testimony makes clear, even a further restriction to only occasional interaction (very little to 1/3 of the workday) with coworkers, supervisors and the public would render the hypothetical individual capable of performing a substantial number of jobs in the national economy. In fact, even a further reduction to no interaction with the general public does not eliminate most jobs according to the VE. Plaintiff's reply brief barely addresses the Commissioner's harmless error argument.

13

(R. 15, PageID# 3008). At most, it suggests that the ALJ did not employ the term "brief" when questioning the VE. *Id.* As stated above, Plaintiff cites no authority suggesting brief is a term of art in the disability context or offer any cogent argument as to why only occasional interaction fails to sufficiently encapsulate "brief" interaction. *Id.* Absent any compelling argument that the term "brief" is more limiting than "occasional," the court finds no purpose would be served by a remand. *See NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"); *Morgan Stanley Capital Group Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 545 (2008) (same); *accord Rabbers v. Comm'r SSA*, 582 F.3d 647, 654 (6th Cir. 2009).

For the above reasons, the court recommends that the first assignment of error be rejected.

**2. Third-Party Statements of Plaintiff's Father**

In the second assignment of error, Plaintiff asserts the ALJ erred by failing to explicitly mention his father's third-party statement concerning his son's impairments in the decision. (R. 12, PageID# 2993-2995). The Commissioner counters that the ALJ was not required to discuss the forms submitted by Plaintiff's father, and that Plaintiff's reliance on SSR 06-3p is misplaced and based on an inaccurate reading of the ruling. (R. 14, PageID# 3004-3005).

As the Commissioner acknowledges, Plaintiff is correct that SSR 06-3p discusses an ALJ's consideration of "other source" opinions. However, Plaintiff fails to distinguish between the various subcategories of "other sources," which the ruling identifies as: (1) medical sources who are not qualified as "acceptable medical sources," (*e.g.* nurse practitioners, physician assistants, *et al.*); (2) educational personnel (*e.g.* teachers, counselors, *et al.*); (3) public and private social welfare agency personnel, rehabilitation counselor; and (4) family members, friends, and other

14

non-professionals. 2006 WL 2329939 at *2 (Aug. 9, 2006). The ruling goes on to explain:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from [1] <u>medical sources who are not "acceptable medical sources"</u> and from [2] <u>"non-medical sources" who have seen the claimant in their professional capacity</u>. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from **these** "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-3p, 2006 WL 2329939 at *6 (emphasis and underlining added).

SSR 06-3p's requirement that an ALJ *explain* the weight accorded to **these** other sources applies to the two categories of "other sources" enumerated directly above that statement—both sets referring to sources who have seen a plaintiff in their professional capacity. This interpretation of SSR 06-3p is not only the more reasonable, but is also consistent with the Sixth Circuit Court of Appeals' decision in *Smith v. Comm'r of Soc. Sec.*, 572 Fed. App'x 363, 368 (6th Cir. 2014), wherein the Court observed that the claimant "ignores the fact that the ALJ was not required" to explain the weight afforded to "[the claimant's] mother's testimony at all."[4]

Plaintiff also cites a number of court decisions in his brief on the merits and in his reply, but all of those cases are inapposite and address situations where the "other source" opinion came

---

[4] Although the revised 20 C.F.R. § 404.1520c(d) applies only to claims filed on or *after* March 27, 2017, it bears noting that said regulation clarified that the Commissioner is "not required to articulate how we considered evidence from nonmedical sources…." Furthermore, it appears that the revisions intended to add "our current policies found in SSR 06-03p, which explains how we consider and when we articulate our consideration of opinions from medical sources who are not AMSs and from nonmedical sources under our current rules, into the final rules for these claims." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Thus, it would not be unreasonable to construe the language on § 404.1520c(d) to be consistent with a correct interpretation of SSR 06-03p, which does apply to claims filed before March 27, 2017.

from an individual who saw the claimant *in his or her professional capacity*—a material distinction Plaintiff does not address. Furthermore, SSR 06-3p requires the ALJ's "discussion of the evidence in the determination or decision" sufficiently allows the claimant and subsequent reviewers to follow the adjudicator's reasoning, which here demonstrates the ALJ opted to ascribe greater weight to acceptable medical sources such as the state agency psychologists than to the Plaintiff's father's opinion.

Finally, the court notes that the ALJ's questioning at the hearing clearly demonstrates that he was aware of the questionnaire completed by Plaintiff's father (Exhibit 15E), as it was specifically mentioned by the ALJ. (Tr. 86). Thus, for the foregoing reasons, Plaintiff's argument suggesting that the ALJ erred by not specifically considering the father's questionnaire or opinions is unpersuasive.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: July 12, 2019

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**